Mr. Valera, we'll start with you. Yes, Your Honor, Mr. Valera, present here, Your Honor. First, let me express my profound thanks to this court for allowing me, for this opportunity to allow me to speak.   For allowing me to argue via Zoom as I'm trying to recover from my surgery and cycles of treatment. And of course, as a second lease in my life, so this is very positive for me. And I have argued cases before Circuit Court of Appeals, but this would be my first time before the 11th Circuit Court of Appeals. And thank you for that. Your Honor, may it please the court. Petitioner here was convicted of misuse of social security number under 42 U.S.C. 408A7B. The main issue before this court is whether or not the least culpable conduct prescribed by 42 U.S.C. meets the standard of a CIMT or a crime involving moral torture. Now, both parties, we are citing the same authority, United States v. Harris. Notably, we also cited case of Aitani v. Ashcroft, pertaining to the definition of CIMT, where it involves baseness, violence, and depravity. Our position here, Your Honor, is we diverge on the issue of whether the conduct that meets the foregoing elements of 42 U.S.C. 408A7B also meet the elements of a CIMT. And we are saying, Your Honor, that the petitioner here who was convicted of misuse of social security number used this for the purpose of obtaining work and to have a support for the medical reasons for the child suffering from left pilot and as well as different surgeries. Now, our position is that, number one, as held by the 11th Circuit Court, the intent to deceive element of the convicting statute does not make the offense so vague, vile, and depraved because one can deceive without intending harm at all. And there is a difference, as held by this 11th Circuit Court, year 2019, United States v. Waters, that there is a difference between deceiving and defrauding. To defraud, one must intend to use deception to cause some injury, but one can deceive without intending to harm at all. In fact, as pointed in Arias v. Lynch, Your Honor, where it illustrates that if there is no intention of causing injury, like in the case of the petitioner, almost similar to the facts of the case cited in Arias v. Lynch, to an employer, but merely to get the job to support her four minor U.S. citizen children who relies solely for support, then the employer does not suffer any injury at all. So are you saying that an offense to defraud the government without the taking of any money can't be an offense of moral turpitude? There is a difference, Your Honor, as I've said. In all the cases that has been decided by this court, even the cases cited by the government, is that findings of crime of turpitude based on deception rely on aggravating factors, especially the actual or intended harm to others. So, for example, in the case at hand, Your Honors, the government here is not injured or defrauded in the sense that he pays his Social Security taxes, he pays his taxes, and knowing fully well that those Social Security benefits will not get into him or be beneficial to him until he gets his legal status. It's obviously in this case where if not for the CIMT categorizations, he should have been entitled to become a permanent resident. That's the reason why, Your Honor, if you look at the concurring opinion of Justice Posner in Arias v. Lynch, as he cited the U.S. Department of Foreign Affairs manual, there are those crimes committed against government authority that divides the crimes which are considered CIMT and those which are not considered CIMT. So false statements, for example, Your Honor, not amounting to perjury or involving fraud falls under the category not constituting CIMT. So although clearly the same would involve deception and dishonesty. So, in other words, if you look at, Your Honor, the BIA and the 11th Circuit decisions which held that base, vile, and depraved conduct is a necessary element of a CIMT but not a necessary element of a 42 U.S.C. 408 A7B. In fact, the 11th Circuit Court decision, Your Honor, which was decided in 2002, the Voxanovic case, and it was also decided in CUNY v. U.S. Attorney General, the 11th Circuit Court said that the term moral torpitude is not defined by the statute. And the Court has stated that it involves an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man. So, in other words, even in the 11th Circuit Court, Your Honor, it's clear in your ruling that in determining whether the conduct prohibited by the statute, for example, the willful destruction of a structure by fire explosion with a lawful or legitimate purpose involves moral torpitude. But it was said that the same evinces a certain baseness in the private and social duties of a man to society. Now, Mr. Valera, let me interrupt you for a second if I could because you've only got a little bit of time left. You have a couple of cases, one from the 5th Circuit, Hyder v. Keisler, and one from the 6th Circuit, Soto v. Holder, which go against you. And they both hold that a conviction under this statute is a crime involving moral torpitude. Why are those cases wrong, do you think? The reason for that, Your Honor, is similar to the cases cited by the government. Walker v. U.S. Attorney General, the Keisler case, the Jordan v. George, the Bellew case v. the U.S. Attorney General, and the Omega v. Ashcroft. What is clear there, Your Honor, is that all these cases reviewed show that the case involved more than the intent to deceive. So clearly, for example, the Keisler case, the case involves where one pleaded and was charged involving conspiracy to smuggle, import, and bring into the United States 6,000 gallons of alcohol fee. So in other words, Your Honor, in all this, the underlying element is there are aggravating factors. In fact, Your Honor, the case cited on the 11th Circuit on Itany v. Ashcroft, for which it says that generally crimes involving dishonesty or false statements are considered generally to involve moral torpitude, citing Moreno v. Silva, but the reality is Itany in turn cited U.S. v. Gloria, Your Honor, a Fifth Circuit court decision in 1974. But that main source was made and the ruling was made within the context of the rules of evidence for the United States courts and magistrates, which means that we are submitting, Your Honor, that Itany case that generally crimes involving dishonesty or false statements are considered generally to involve moral torpitude and it should be confined, only, Your Honors, to the context of impeaching witnesses for its relevance to show lack of truthfulness and not as an indication or indication of baseness, vileness, or depravity. Your Honor. Okay, Mr. Valera, thank you very much. You've saved your time for rebuttal. Yes, Your Honor. Thank you. Mr. Stanton. Good morning. May it please the Court, I also want to thank the panel for granting our motion to argue this case remotely. I have young children who are not vaccinated and they're in summer camps and they have strict rules about family members traveling and not quarantining, so thank you very much as well. But the issue here in this case, I believe, in lay terms of the standard of review, was the agency acting unreasonably when it interpreted 42 U.S.C. 408 A7B as a crime involving moral torpitude. The immigration judge in this case was sitting in Georgia, so of course he had to apply the case law from this court. And he looked around and he saw a 2012 decision from this court of item published, which I'll get to in a minute, holding that this exact same statute issue here did indeed constitute a crime involving moral torpitude. And nothing's changed since then. The statute still reads the same way it did in 2012. It's actually been the same since 1981. Unlike the first case this court heard, there's been no intervening Supreme Court decision. There's been no decision from this court suggesting that the Moreno-Sova 2012 unpublished decision was wrongly decided. So it's, I believe, very, very difficult to conclude that the agency's interpretation applying this court's case law was unreasonable. Well, let's, Mr. Stanton, let me ask you a question. According to the BIA, and I am looking at the Diaz-Lizarraga case from the BIA, a published presidential decision from 2016, the BIA says that determining whether a crime is one involving moral torpitude includes two things. One is an intent to deprive someone of property or something else, acting with intent to defraud. But the first element is to figure out whether or not the conduct is reprehensible, inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. How is that standard met here? The standard isn't met, Your Honor, because the elements of the statute here involve an intent to deceive, which is really key here. These cases are not cited in my brief, but this court's predecessor, the Fifth Circuit, has recognized that when someone's seeking admission, immigration status to the United States lies to immigration officials to gain admission entry to the United States. That is involving deception, a crime involving moral torpitude. I know, but deception is not the same thing as conduct that is inherently base, vile, depraved, or contrary to the accepted rules of morality. I speak only for myself, but it seems to me that courts have started to sort of take the second prong, the intent to defraud prong, and sort of substitute it for the first or lap both into the same one. They conflate the two, and once you show intent to defraud, you've got a crime involving moral torpitude. But the BIA itself says that you need the first element, which is that the conduct itself has to be inherently base, vile, depraved, and contrary to the accepted rules of morality. So how do we distinguish among intent to defraud crimes given that first requirement? Given the first requirement, I mean, I'll certainly go back to this court's case law. It could be that, I mean, if this court knows, and as petitioners point out, there are certainly other circuits which have added additional elements to cases involving this particular statute. But as far as this court, as far as the former Fifth Circuit, I mean, intent to deceive is sufficient to put us in CIMT territory. All right, but that can't be right. If we're supposed to be giving deference to the BIA, the BIA says that intent to defraud is not enough. That's only the second element of moral torpitude. So what do we do with the first one? That's my concern in this case. Right, but I would also point out, as the Fifth Circuit held earlier this year, there is indeed injury here. There is injury to the government. This is not a victimless crime. So, I mean, Social Security fraud has been a big concern for Congress for quite some time. Originally, the position that was originally became 408-A72B on receiving benefits, unauthorized benefit for yourself. Eventually, they saw some of the abuses that were going on, which were causing tax problems, Social Security balance problems. And they changed the statute to mean for any purpose. And so, I mean, to the extent that, I mean, you need a victim here, if that's what Your Honor is asking. I mean, the victim, government, as well as individuals who are potentially impacted. Like whoever this, the record didn't reveal whether a petitioner here, whether his Social Security number involved another person. But if it did, that person could be liable for taxes because he's reporting on lower income with another Social Security number at issue here. Mr. Stanton, I'm sorry, were you finished? Mr. Stanton, are you arguing that there are any BIA precedential cases to which we owe deference in this case? I believe the board has been pretty consistent in interpreting. Deceptive conduct alone is good enough. Where are my cases? The board has been consistent. Yeah, I mean, yes, there's a 2013 public decision where the matter depends on 26 INN decisions, 189. I mean, it was pretty similar here. I'm sorry, Mr. Stanton, you broke up a little bit. Can you tell me the citation to that case again? 26 INN and the page number? Yeah, INN decisions 189. It's a 2013 board decision matter. It depends on a rule that a conviction for making a false, fictitious, or fraudulent statement to obtain a United States passport. There's a crime involving moral turpitude. And there's also a case called Matter of Flourish. 17 INN decisions, 225, which is a 1980 public board decision. It held that uttering and selling false counterfeit papers relating to the registry of non-citizens, which is an outdated term, is a crime involving moral turpitude. Are you familiar with a BIA case called Jurado Delgado? I am not, no. If you'd like to tell me about it, I'll try to address it as best I can. That's a case, the site is 24 INN 29. That's a 2006 BIA case. And the Fifth Circuit gave deference to that opinion in a case called Munoz Rivera. And that case says intent to deceive is the controlling factor in the crime of moral turpitude determination. I'm wondering if that's something, if that's a case to which we'd have to give deference. But if you're not familiar with it, maybe you can't answer me. If the intent to deceive is sufficient, yes, absolutely. I believe we could give deference to that. Absolutely. Here. So, again, going back even to this court's predecessors, I mean, consistent with the immigration, I'm sorry, the BIA decision I just cited, there's a Duran Garcia versus Neely, 2006 S. 2nd, 287, a 1957 Fifth Circuit decision, perjury on immigration application for the purpose of obtaining work, a crime involving moral turpitude. Also, United States versus, I'm sorry, United States X. Ralph Flores versus Savaretti, 2005 S. 2nd, 544, a 1953 Fifth Circuit decision, again, a perjury case, and the non-citizen claimed that he was only trying to get work because his wife was seriously ill and the family needed money. So, I mean, these cases were not cited in my brief. I consulted with my colleague who did the Fifth Circuit case recently, the 28-9J letter, the Muniz-Riviera case, and he told me about these Fifth Circuit cases, and I'm like, oh, I should have cited them. So I apologize for that. As well, but this court and its predecessor had been pretty fairly, I mean, in holding that intent to deceive is sufficient to render defense to crime involving moral turpitude. I don't think there's a single decision from this court or its predecessor holding the intent to deceive is insufficient. And so you think that essentially the case law has taken away the first element of the definition? Well, I mean, again, I probably, I mean, the case law is what it is. I mean, the board certainly didn't act unreasonably when it's consistent with this court's case law. But you think, so you think there's something to my contention that the first requirement has sort of been blocked and blotted out of existence? No. Well, nobody decides whether in these cases, maybe not all of them, but the majority of the ones that I've read in the 11th and Fifth Circuits, none of them, most of them don't address whether something is inherently vile, depraved, and inherently base. They just say you committed something that required intent to defraud, end of story, you're done. But the VIA keeps telling us that there are two prongs and intent to defraud is only one of the prongs. So what are we supposed to do with that? What are we supposed to do with that? I mean, well, I mean, again, I'm showing my original point that the board's interpretation here was certainly not unreasonable. And so, I mean, if, I mean, Is it unreasonable if it conflicts with its own published binding precedents that say that there are two prongs to the standard and they don't apply one of the prongs? And then in later cases, they keep telling you there are two prongs? Well, given this court's case law and as well as its punishment, I mean, I'm still submitting it's not unreasonable. Okay. All right. And also to the extent that this is relying on the Seventh Circuit decision, I mean, to the extent it could possibly come up with some theoretical offense that's ostensibly for normal purposes. I also want to point out that this court has rejected, effectively, that line of reasoning in the Pierre case, which is submitted, which is cited in our briefs. I mean, that case involved sexual battery on a child by expunging bodily fluids. And this is something that seems inherently morally true for DENIS. And if you try to argue, well, it's theoretically possible that someone could urinate on a child and step on a jellyfish to alleviate the pain, that would not be morally true for DENIS. And this court says we're not going there. So long as the element is inherently, pardon me, CMIT, inherently CMIT, we're not going to get into whether or not it's theoretically possible to come up with more normal purposes, especially if they're not actually being prosecuted by the government. So. Okay, Mr. Sandberg. You want to wrap up? Yes. And so, again, I would directly submit that what the board did here was not unreasonable, given the case law. And so, I mean, and again, Social Security fraud is a very, very serious problem in the United States. I mean, and besides everything else, the petitioner took a job away from someone else who probably was eligible for it. So, again, this is not a victimless crime and it's something the government takes very seriously. So, okay. Thank you. All right. Thank you very much, Mr. Stanton. Mr. Valera, you have your rebuttal time left. Thank you, Your Honor. Again, let me emphasize that the BIA and this court have held that base, vile, and depraved conduct is a necessary element of CIMT, which is not a necessary element of the 42 U.S.C. 40887B. Mr. Valera, are you familiar with the case, that Gerardo Delgado case from the BIA that I asked Mr. Stanton about? I am not familiar. My question specifically would be whether that cuts against the decision that Judge Jordan was talking about, or the decisions. Yes, Your Honor. I'm not familiar with that case, but what I wanted to do right now is cite BIA case precedents where it says that one of the important elements in categorization and classifying a conduct as CIMT is it must be inherently base, vile, or depraved, which are the following cases. The government cited Matter of Flores, BIA decision in 1980, but that was a confirmation of the case that it should be the element of inherently vice, vile, or depraved. There are also cases way back in Matter of Short, BIA decision of 1989, Matter of Ajami, BIA 1999, and we have also the several BIA decisions in 1994 of Matter of Franklin where confirming that it's very important that the intent to deceive is not enough. It has to be something that is inherently base, vile, or depraved. And that's the reason why, Your Honor, if you look at the Foreign Affairs Manual, it clearly delineates and makes a distinction what are those crimes committed against the government authority which are considered CIMT or not. Now, in the case of the petitioner here, Judge, Your Honors, he continues to pay his taxes, social security benefits, knowing fully well that it is required under the law. As we know, even during the time of President Reagan, when the amnesty law was passed, one of those pardonable offenses were the misuse of social security numbers which allows somebody to get the green card. Similar to this, this categorization of CIMT, he should have gotten his permanent residence in the United States. So, this Circuit Court, Your Honor, again, emphasizing what you have ruled in United States versus Waters, there is a difference between deceiving and defrauding. Defraud, one must intend to use deception to cause some injury. But one can deceive without intending to harm at all. There is no harm here to the government. Now, considering the billions of dollars that the government have been receiving in their coffers for several millions of undocumented immigrants who are paying taxes and social security benefits, knowing that they will not be allowed to benefit from them until they get their legal status. And that is precisely the point that we are emphasizing here, that the situation of the petitioner here is very much different, considering that there is no injury to the employer, there is no injury to the government. In fact, after... Well, I can understand you're saying that there is no injury to the employer because the employer is getting work and paying for the work regardless of who the employee is. But how can you say that there isn't injury to the government when someone is using a social security card or document or number illegally or fraudulently? The reason for that, Your Honor, is when petitioner pays taxes, of course, federal, state taxes and social security payments are deducted from his salary and likewise, of course, turned over to the government. Now, in a way, you can say that this conduct had negligible impact on the U.S. government is shown by the fact that, of course, he suffered no jail term and he was placed under unsupervised provision. And as I was saying, when it's... There is a difference between how USCIS and IRS runs the payment of taxes. Whether you're undocumented or not, you have to pay taxes if you earn income. That's the first question they ask if somebody is applying to become green card. Did you pay taxes? Even if you're undocumented or not. And, of course, as a general rule, like my client, they all pay their taxes knowing fully well that they will not benefit from it until they have a legal status. Okay, Mr. Valera. Thank you, Mr. Stanton. Thank you. We appreciate the help and we are in recess until tomorrow morning. Thank you, Your Honor. Thank you.